The Honorable Dave A. Bisbee State Representative 14068 Pyramid Drive Rogers, Arkansas 72758
Dear Representative Bisbee:
This is in response to your request for an opinion on whether "the board of directors of a local school district can submit an existing controversy to binding arbitration, in lieu of seeking court action, without undermining the board's authority under current state law."
It is my opinion that the answer to your question is not entirely clear under existing law. It is my opinion, however, after a review of all the applicable law and statutes, that a court faced with the question could well conclude that the answer is "yes," school districts do indeed have such authority. I should note that my opinion, as it regards employer-employee disputes, however, is strictly limited to "existing controversies" and does not conclude that agreements to engage in binding arbitration of future employer-employee controversies would be valid. That is, a school district may agree, in the face of a dispute or controversy involving its employees, to submit that dispute to binding arbitration. In my opinion, however, a school district may not enter into an agreement to submit future controversies with employees, which have not arisen at the time of the agreement, to binding arbitration. Local school boards apparently do have power to enter into binding arbitration agreements for most other kinds of disputes, whether the agreement is to arbitrate an existing controversy or one occurring in the future. Such agreements, however, must be entered into voluntarily by the school district. Such districts cannot in my opinion lawfully be compelled to engage in collective bargaining or binding arbitration
You have referenced Op. Att'y Gen. 75-062, issued by a previous administration, which addresses a similar question, but you indicate that this opinion does not seem to address the issue you pose, which I interpret as being whether a school district can submit an existing
controversy to binding arbitration as a last resort prior to or instead of the institution of judicial proceedings. Opinion 75-062 concluded that school districts were not authorized to enter into agreements with teachers' organizations for binding arbitration of contractual issues, teachers grievances, and differences over interpretation of school district policies. The opinion concluded that in the absence of legislative authorization, such an agreement would be an unlawful delegation of a school board's statutory responsibility over such matters. It is my opinion that this conclusion, at least as regards existing controversies, has been changed by two new statutes on the question and by the amendment of a third statute.
It will be helpful, in my opinion, to review some of the pertinent terms prior to setting out and discussing the applicable statutes and Arkansas Supreme Court decisions. "Arbitration," of course, is the "reference of a dispute to an impartial (third) person chosen by the parties to the dispute who agree in advance to abide by the arbitrator's award. . . ."Black's Law Dictionary (5th ed. 1979) at 96. It has been stated, however, that:
 There are two quite different types of labor arbitration: grievance arbitration, or `arbitration of rights,' and impasse arbitration, or `arbitration or interests.' In dealing with public sector labor relations, it is particularly important to be aware of the differences between the two. In the private sector, impasse arbitration is seldom used; references to `arbitration' almost always mean grievance arbitration. But in the public sector, where strikes by public employees are usually illegal, impasse arbitration is important and occasionally mandated by statute. Grievance arbitration involves the determination of rights under an existing contract by an arbitrator acting in a judicial capacity. Impasse arbitration, on the other hand, is utilized when the parties are unable to agree to the provisions of a labor contract at the bargaining table; it is a substitute for the economic weaponry of strikes and lockouts in the determination of what the contract rights of the parties shall be. The impasse arbitrator is a combination policy-maker, administrator, and chancellor at equity; in contrast to the grievance arbitrator, he is a formulator, rather than a follower of the parties' contract.
Edwards, Clark, and Craver, Labor Relations Law in the Public Sector:Cases and Materials, p. 711 (Michie Company (3rd ed. 1985)).
The distinction between the two is important because compulsory impasse arbitration can give rise to the argument that an unlawful delegation of legislative authority has occurred. For example, in Czech v. Baer,283 Ark. 457, 677 S.W.2d 833 (1984), the Arkansas Supreme Court struck down an initiated "binding-arbitration ordinance," which would have required future policemen's wage controversies not resolved by agreement to be referred to an arbitration panel whose decision would be final. The Supreme Court held that the ordinance would be invalid even if approved by the voters, because the city would be abdicating or delegating its legislative power to fix employees' pay. The court stated: "It is provided by state law that a city's legislative body is to fix the number and salaries of its policemen and firemen. [Citation omitted.] It is fundamental that a city's legislative power cannot be delegated to a committee or an administrative body. [Citation omitted.] Nor can the city directors delegate or bargain away their legislative authority."283 Ark. at 460. The court then cited some language from City of Fort Smithv. Council No. 38, AFL-CIO, 245 Ark. 409, 433 S.W.2d 153 (1968), a case holding that a city cannot be compelled to bargain collectively with its employees, as follows:
 Basically, the reason for the rule is that the fixing of wages, hours, and the like is a legislative responsibility which cannot be delegated or bargained away. [Emphasis original.] Several aspects of the matter were discussed in the Wichita case [194 Kan. 2, 397 P.2d 357 (1964)], where the court said:
 The entire matter of qualifications, tenure, compensation and working conditions for any public employee involves the exercise of governmental powers which are exercised by or through legislative fiat. Under our form of government public office or public employment cannot become a matter of collective bargaining and contract.
 The objects of a political subdivision are governmental — not commercial. It is created for public purposes and has none of the peculiar characteristics of enterprises maintained for private gain. It has no authority to enter into negotiations with labor unions concerning wages and make such negotiations the basis for final appropriations. Strikes against a political subdivision to enforce collective bargaining would in effect amount to strikes against the government.
283 Ark. at 460-461, citing City of Fort Smith v. Council No. 38,AFL-CIO, 245 Ark. 409, 433 S.W.2d 153 (1968).
The court thus held that "state law" prohibited a city from abdicating or delegating its legislative power to fix its employees' pay. The court discounted six out-of-state cases cited by the appellees upholding binding arbitration agreements, because in each case the decision was based on a statute permitting the procedure. The court noted, in this 1984 case, that Arkansas had no similar statute.
Czech v. Baer involved binding arbitration agreements of municipalities, not school districts. A similar analysis could be applied to school districts, however. Local school district boards of directors are currently charged by state law with the responsibility to enter into contracts with teachers and other personnel, and to set their salaries.See A.C.A. § 6-13-620. Additionally, it has recently been held that the sole power to execute a teacher's contract is vested in a school district's board of directors. Teague v. Walnut Ridge Schools,315 Ark. 424, 868 S.W.2d 56 (1993). Unless otherwise authorized by statute,
therefore,[1] it is my opinion that an agreement for binding arbitration of such matters would be invalid.
There are three statutes which are of relevance to the question, however, and which, in my opinion, operate to authorize the submission of existing school district controversies to binding arbitration. One statute was enacted in 1987, one in 1993, and one was amended in relevant part in 1993, all after the decision in Czech v. Baer, supra. In my opinion, under these statutes, only existing employer-employee controversies, personal injury or tort matters, and certain insurance matters may be submitted by school districts to binding arbitration, but other types of controversies do not appear similarly limited. That is, it would appear that agreements by a school board to submit future
controversies to arbitration, as long as they are other than those types of disputes listed above, would be valid.
The first statute is A.C.A. § 6-17-202 enacted in 1987. That statute provides that the provisions of A.C.A. §§ 6-13-201 through -207, requiring a "personnel policies committee" in each school district, "shall not apply in any district which chooses to officially recognize in its policies an organization representing the majority of the teachers of the district for the purpose of negotiating personnel policies, salaries, and educational matters of mutual concern under a written policy agreement." It is unclear exactly what is contemplated by this section. This office has previously opined that this is a limited statute, the impact of which is only to exempt school districts recognizing such an organization from the requirement of having a "personnel policies committee." See Ops. Att'y Gen. 91-369 and 90-148. It was noted that the statute does not govern the extent of the agreement. See Op. Att'y Gen. 91-369. The statute does not refer to "collective bargaining"[2] or binding arbitration, referring merely to a "written policy agreement." It is unclear in my opinion whether this statute would be read by a court to authorize agreements which include provisions for binding arbitration. This is especially true when read in light of the remaining sections of the subchapter. The provisions relating to "personnel policies committees" provide that the local school board may "adopt, reject, or refer back to the committee on personnel policies for further study . . . any proposed policies or amendments to existing policies that are submitted to the board for consideration." A.C.A. § 6-17-205(f) (1987). Emphasis added. The local school board thus retains the authority to reject any proposed "policies" put forth by the committee. A local board would give up this authority under a collective bargaining agreement with a teachers' association which provides for binding arbitration of such matters. If this statute were cited as the sole authority for such binding arbitration, the result would be to authorize such arbitration in some districts (those recognizing a teachers' organization) and not in others (those having a personnel policies committee) depending upon the form of representation of the teachers. In my opinion this was not the legislative intent. This statute, in my opinion, cannot be relied upon in a vacuum as authority for a school district to engage in binding arbitration as part of a "written policy agreement." A school district's power to abdicate its authority over such matters as salaries of employees would have to be more clearly granted than is evidenced by this statute. As we shall see, however, this is not the only statute which is relevant to the question.
The second statute is found in the "Uniform Arbitration Act," codified at A.C.A. §§ 16-108-201 through -224. It provides that:
 (a) A written agreement to submit any existing controversy to arbitration arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.
 (b) A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract; provided, that this subsection shall have no application to personal injury or tort matters, employer-employee disputes, nor to any insured or beneficiary under any insurance policy or annuity contract.
A.C.A. § 16-108-201 (Cum. Supp. 1993).
This statute was expanded in 1993 to validate agreements to submit any type of existing controversy to arbitration. See Act 287 of 1993. The former statute exempted agreements relating to employer-employee disputes, tort matters, and insurance matters from the validity granted by the statute period, whether the agreement was to arbitrate an existing dispute, or an agreement to arbitrate disputes arising in the future. The new statute does not validate agreements to arbitrate future controversies if they involve employer-employee disputes, tort matters, or insurance matters, but it does operate to validate agreements to submit existing controversies involving such matters to arbitration. The statute does not specifically refer to public entities entering into arbitration agreements. It merely refers to "any existing controversy," and "any controversy." The third and final relevant statute, however, does refer specially to public entities. Sections 16-7-101 through -107 of the Arkansas Code (enacted in 1993) provides at § 16-7-101 that:
It is the intent of the General Assembly to:
 (1) Encourage and authorize the use of dispute resolution processes throughout this state to resolve disputes, cases, and controversies of all kinds. Such processes include, but are not limited to, negotiation, mediation, conciliation, arbitration, private judging, moderated settlements conferences, med-arb, fact finding, mini-trials, and summary jury trials;
 (2) Encourage the development of new and the improvement of existing processes in this state;
 (3) Encourage the courts, the officers and employees of the courts of this state, state and local officers, departments, state and local governments and administrative agencies, state and local enforcement officers and agencies, prosecuting authorities and public defenders, and all other state and local officials, agencies, districts, and authorities to become versed in, accept, use, develop, and improve processes appropriate to the fair, just, and efficient resolution of disputes, cases, and controversies of all kinds in this state.
Section 16-7-103 provides as follows:
 It is the duty of all the elements of government expressed or implied by § 16-7-101(3), and they are hereby authorized, to use dispute resolution processes in resolving any and all disputes, cases, or controversies in which they may be directly or indirectly involved, whether between themselves and members of the public or between any other state or local officer, agency, government, or entity of this state or other any other state or any element or entity of the federal government. [Emphasis added.]
The statues above are drafted very broadly. In my opinion the language of A.C.A. § 16-7-101(3) is broad enough to cover local school districts, and the reference to "any and all disputes," is broad enough to cover all types of disputes, including employer-employee disputes. This subchapter, unlike the Uniform Arbitration Act, is not specific to arbitration, although arbitration is included in the definition of "dispute resolution processes." In my opinion, when the provisions of these two acts (which were adopted at the same session of the legislature) are read together, the result is that school districts are authorized to engage in binding arbitration of "any and all controversies" but that according to the more specific Uniform Arbitration Act, agreements to arbitrate controversies arising in the future between the school district and its employees (or involving tort or insurance matters) would not be valid.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] Although the unlawful delegation at issue with binding arbitration agreements is sometimes said to give rise to constitutional problems (see generally, 16 C.J.S. Constitutional Law, § 141) it would appear in Arkansas, at least as regards school districts, to be purely a statutory matter. See Arkansas Constitution, art. 14, § 4, stating that "the supervision of public schools and the execution of the laws regulating the same shall be vested in and confided to such officers as may be provided for by the General Assembly." Additionally, there is under Arkansas law no constitutional "separation of powers" doctrine applicable to school districts which would prohibit such delegation.
[2] "Collective bargaining" is a term often used in conjunction with binding arbitration, as binding arbitration is often included as a requirement in collective bargaining agreements.